UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 7:23-cr-00286 |
| Plaintiff, | |
| v. | |
| JOHN CHEN, | |
| Defendant. | |

Through counsel, John Chen respectfully submits this memorandum to assist the Court in determining an appropriate sentence. Sentencing is scheduled for November 19, 2024.

## I. PRELIMINARY STATEMENT

### A. Procedural History

On July 24, 2024, Mr. Chen pled guilty to Counts 2 and 3 of the indictment, a violation of 18 U.S.C. §§ 951 and 2, and 18 U.S.C. §§ 201(b)(l) and 2: Acting as Agent of a Foreign Government and Bribery.

### B. Facts Related to the Offense

Mr. Chen was involved in a series of actions that arose from the Chinese Government's (PRC) efforts to target and suppress Falun Gong practitioners. To that end, Mr. Chen attempted to assist the PRC by submitting a fraudulent whistleblower complaint to the IRS and ultimately paying a bribe to a fictitious IRS agent.

### C. Personal and Social History

**Personal and Family Data**

Mr. Chen was born on August 28, 1952, in Tianjin, China. He immigrated to the United States in 1992 on a visa designated for international business managers and became a naturalized U.S. citizen in California in 2000, at which point he changed his name from Jun Chen to John Chen. His immigration record shows his official entry into the United States on September 22, 1994. Mr. Chen has since resided in the Central District of California but has returned to China on several occasions, maintaining personal and professional ties in both countries. He is currently housed at the Metropolitan Detention Center (MDC) in Brooklyn, New York.

Mr. Chen was raised in Tianjin, China's third-largest city. He grew up in an apartment building designated by the government for employees of the hospital where his father worked as the head of the orthopedic department. His father, Ping Chen, was an orthopedist, and his mother, Jun Qing Meng, worked as a nurse in a clinic serving textile factory employees. Mr. Chen described his family's socioeconomic status as "slightly better than middle-class," noting that his parents ensured that he and his siblings were well-cared-for. His parents had a stable marriage and that neither struggled with substance abuse. Mr. Chen believes that his father passed away in 2004 at the age of 87 or 88 due to complications from hypertension and a stroke, while he believes his mother died in 1979 at the age of 62 from diabetes complications.[1]

Mr. Chen is the oldest of four children. His sister, Li Chen, is 70 years old and works as a family law attorney. His other sister, Juan Chen, aged 68, is a retired police officer, and his brother, Lin Chen, aged 62, owns a small sweater factory. All of his siblings still reside in Tianjin, China. Mr. Chen has maintained a close relationship with his siblings, and they have remained emotionally supportive of him, particularly following his arrest for the current offense.

### Childhood and Military Service

During his childhood, Mr. Chen was raised without any particular religious beliefs and was taught to be patriotic, wearing a red scarf to symbolize his support for the Communist Party. He described his overall childhood as happy, with no history of abuse. In 1969, when Mr. Chen was around 16 or 17 years old, he joined the Chinese Air Force. This decision was influenced by the Cultural Revolution, during which schools were closed, and many urban youth were sent to rural areas for labor. He joined the military to avoid being sent to work as a laborer. Mr. Chen served in the Chinese Air Force until 1975, working on maintaining and calibrating parts of military aircraft. He received an honorable discharge, held the rank of soldier, and did not receive any combat training or decorations during his service.

### Marriages and Relationships

---

[1] After speaking to Richard Chen, Mr. Chen's son, it was discovered that Mr. Chen was incorrect on these dates. In fact, his father passed away in 2008 and his mother died in 1988.

Mr. Chen met his first wife, Shu Zhen Wang, while attending the University. The two later married and had one son, Richard Chen, born in July of 1979. Following Mr. Chen's immigration to the United States in 1992, Ms. Wang remained in China while Mr. Chen lived in the United States with Richard. She later relocated to the United States but the couple ultimately divorced in 2005.

Mr. Chen reported that they maintain a cordial relationship and that Ms. Wang, who is retired from owning and running a textile factory, has been emotionally supportive of him since his arrest. Their son, Richard, lives in Orange County, California, where he works as a certified public accountant.

Richard is married with twins—a boy and a girl—both born prematurely at 23 weeks. The two were treated at several California Hospitals and are now thriving. Mr. Chen has expressed gratitude to the United States for saving their lives and recognizes that had they been born in China, they likely would not have survived.

Mr. Chen maintains a very close relationship with Richard and his grandchildren. Richard is aware of his present situation and is emotionally and financially supportive of his father.

In 2005, Mr. Chen married Jiali Zhang in Diamond Bar, California. He described their marriage positively but noted that they ultimately separated due to issues arising from the generational age gap. They divorced in 2015 but still jointly own a business, Meadow Decor, Inc., which distributed patio furniture. Mr. Chen reported that their relationship remains amicable, and Ms. Zhang has continued to support him emotionally during his current legal situation. The couple has two children: Jimmy Chen, born in 2005 or 2006, who is currently studying entomology at the University of California, Davis; and Julia Chen, born in 2007, who is a senior in high school with a 3.9-grade point average. Mr. Chen noted that he maintains contact with both children, who are in good health.

Mr. Chen is currently engaged to Ji Ying Liu, whom he met in 2017 or 2018. Ms. Liu resides in the Shandong province of China, where she is an investor in an amusement park. Due to her business interests and language barrier, she does not intend to relocate to the United States. Mr. Chen reported that they have a supportive relationship and visit each other as often as possible. Ms. Liu has two adult children, ages 34 and 35, from a previous marriage, both of whom also reside in China.
.

**Education/Work History/Community Activity**

Mr. Chen completed middle school in China before the Cultural Revolution led to the closure of schools. He later completed a three-year finance and economics program at the Tianjin University of Finance and Economics in 1978. However, due to ongoing political issues, he did not receive a formal degree. He became a certified economist after passing a licensing exam. Mr. Chen also noted that he had some proficiency in English, having been selected at the age of 13 to participate in an English language program.

Mr. Chen co-founded Meadow Decor, Inc. in 2000, serving as its president until his retirement at the age of 65 in 2017. The company distributes and sells patio furniture; the furniture is manufactured in China and the cushions are made in the United States. He continues to own a 25% share of the company, with his former wife owning another 25%, and the remaining shares held by David Mok. He also co-owned a failed business selling light fixtures, which ended in bankruptcy, and operated a company called New Continental Worldwide, Inc. in the 1990s, which sold American vehicles to Chinese customers.

In addition to his work, Mr. Chen was active in his local community in California. There, he formed an organization that supported the Southern California Chinese Community, where he was the chairman for several years. His service involved helping to enhance the relationship between members of the Chinese Community with the US business society. Further, Mr. Chen has written several books on American and Chinese history, describing the struggle and success stories of Chinese Americans and the beauty of the relationship of the two countries when they are at peace.

**Physical Health**



Mr. Chen has been ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Over the past several years, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓s.

**Mental and Emotional Health**

Mr. Chen experienced insomnia and bouts of anxiety following his arrest in May of 2023, due to concerns about his future, but he has since adjusted to his current

circumstances. Mr. Chen has no history of substance abuse or treatment for alcohol or drug dependency. He reported that he first drank alcohol in his early twenties but does not care for it and has not consumed alcohol since he was in his thirties. Throughout his life, Mr. Chen has not faced any other mental or emotional health issues and has not sought mental health treatment.

### Summary of Sentiments

Despite his current legal situation, Mr. Chen expressed his continued love and support for the United States and maintains that he will strive to positively contribute to society upon his release. He emphasized his gratitude toward the United States, particularly regarding the medical treatment his grandchildren received following their premature birth. Mr. Chen also underscored the ongoing emotional support provided by his family members, including his children and former spouses, throughout the legal proceedings.

## II.    SECTION 3553(a) FACTORS

Rather than doing away with Guideline sentences, *Booker* has allowed District Court judges more latitude than they previously enjoyed. All sentences begin with an analysis of the Guideline range and whether there is any latitude that can or should be given to a particular Defendant. *United States v. Booker* (2005) 543 US 220, 160 L Ed 2d 621, 125 S Ct 738.

Title 18, United States Code, Section 3553(a) instructs courts imposing sentences as follows:

> (a) Factors To Be Considered in Imposing a Sentence. – The court shall impose a **sentence sufficient, but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection.

18 U.S.C. § 3553(a) (emphasis added). Following that introductory mandate, section 3553(a) continues on to list a series of additional factors including, but not limited to, the history and characteristics of the defendant. *See*, 18 U.S.C. § 3553(a)(1)-(7).

Section 3553(a) represents "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall v. United States,* 552 U.S. 38, at 50 & n. 6 (2007) (citation omitted). Courts must consider each of those factors in fashioning sentences that are "sufficient, but not greater than necessary" to comply with those statutory objectives. 18 U.S.C. § 3553(a). They include the history and characteristics of a defendant, the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. §§ 3553(a)(1), (2)(A). They

also include the need for the sentence to afford adequate deterrence, and to consider the public's need for protection from future crimes. 18 U.S.C. § 3553(a)(2)(B)-(C). Section 3553(a) further requires the Court to consider the kinds of sentences available and Guidelines range applicable to the defendant ((a)(3) and (4)), and any pertinent policy statement issued by the Sentencing Commission ((a)(5)). The factors also emphasize the need to avoid unwarranted sentencing disparities among defendants with similar records ((a)(6)).

Moreover, the Guidelines are advisory only; they are not mandatory, they are not even presumptively reasonable, and they represent only one of a number of relevant considerations. *See Nelson v. United States*, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable . . . . The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable."); *Rita v. United States*, 551 U.S. 338, 367 (2007) ("the Guidelines are truly advisory"). An independent review of the factors set forth in 18 U.S.C. § 3553(a) should occur in each case as well, as the court must "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.'" *Gall*, 552 U.S. at 52; *see also Koon v. United States*, 518 U.S. 81, 113 (1996).

### A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The nature and circumstances of the offense, as well as Mr. Chen's history and characteristics, are crucial elements in determining a fair sentence. While Mr. Chen's conduct was undoubtedly serious, it must be recognized that his actions were influenced by complex motivations and significant external pressures beyond mere personal gain. These factors are essential in assessing Mr. Chen's actions and in understanding why leniency from the Court is appropriate in his case.

Mr. Chen's life story reflects the journey of an individual who has overcome numerous challenges to make a meaningful contribution to his adopted country. Mr. Chen was born in China during a tumultuous period in its history and endured the hardships of the Cultural Revolution. During this time, millions of youth were forced into rural labor as part of government policies, which disrupted families and communities across the country. Faced with a harsh life outcome if sent to the countryside as a laborer, Mr. Chen had no choice but to join the Chinese Air Force, using military service as the only way to escape being sent to the countryside as a laborer. His decision demonstrated a remarkable level of resourcefulness and courage at a young age, as he sought stability and opportunity amid national upheaval.

After serving in the military and continuing to study while he was in a secluded military camp, he never gave up his dream of going back to school. He ultimately got that chance and used it to gain knowledge in finance and economics, which he used to better his life. Prompted by the turmoil of China, Mr. Chen set his sights on a new life in the

United States. His journey as an immigrant was marked by significant challenges familiar to many who seek a better future in a foreign country. Mr. Chen worked diligently to establish himself in a new society, eventually becoming a naturalized citizen in 2000. He not only adapted to a new language and culture, but also utilized his background in finance and entrepreneurship to contribute positively to his community.

Mr. Chen's business endeavors, including the founding of Meadow Decor, Inc., showcased his entrepreneurial spirit and his desire to create value for his community. By employing others, including his family members, and contributing to the local economy, Mr. Chen demonstrated a commitment to improving both his own life and the lives of those around him. His business helped create jobs and provided quality products to the community, illustrating his desire to be a productive member of society.

Moreover, Mr. Chen's relationships with his family provide additional context that underscores his character. Despite the challenges of building a life in the United States while his first wife remained in China, Mr. Chen maintained his commitment to his family, supporting his son, Richard, and eventually building a new life with his second wife, Jiali Zhang. His ongoing support of his children and close relationships with his family members indicate a deep sense of responsibility and love. Mr. Chen's family, including his former spouses and his children, continue to support him emotionally, which speaks to the positive influence he has had in their lives. This steadfast support from those closest to him reflects the values that Mr. Chen has instilled within his family—values of loyalty, responsibility, and resilience.

Furthermore, Mr. Chen has consistently expressed his love for the United States and his gratitude for the opportunities it has provided him and his family. His gratitude for the healthcare his grandchildren received, and his statement that he "owes quite a lot to this country," are not mere words but reflect a genuine appreciation for the opportunities he has been afforded. Mr. Chen's respect for the United States and his desire to be a law-abiding, contributing member of society were evident in his actions before his offense, as he built a life that adhered to the law and positively impacted his community.

The circumstances of Mr. Chen's offense also reveal a level of vulnerability that cannot be ignored. Mr. Chen, at this stage in his life, found himself under significant external pressures, influenced by individuals who exploited his connections and background. His involvement was not driven by pure self-interest or financial greed; rather, he was attempting to navigate complex political and personal dynamics, which ultimately led him to make regrettable choices. This context does not excuse his conduct, but does serve to mitigate his level of culpability. It suggests that Mr. Chen's actions were the result of poor judgment in the face of considerable external pressure, rather than an ingrained disregard for the law.

In assessing Mr. Chen's history, it is important to recognize that this offense represents a departure from a lifetime of otherwise lawful and productive behavior. Mr. Chen's record prior to this incident was devoid of any criminal history, and he had successfully managed multiple business ventures without any previous incidents involving the law. This background of law-abiding conduct is a strong indicator that the

instant offense was an aberration in an otherwise responsible and productive life. His age, health conditions, and the fact that he has already experienced significant consequences, including incarceration, further suggest that the likelihood of reoffending is low. Mr. Chen has demonstrated sincere remorse for his actions and has shown a willingness to accept responsibility for his role in the offense.

The hardships Mr. Chen faced throughout his life, including growing up during the Cultural Revolution, the challenges of immigrating to a new country, and his efforts to build a successful business, are all indicative of a person who is resilient and capable of change. His personal history reveals an individual who, despite making serious mistakes, has the potential to continue contributing positively to his family and society if given the opportunity. Leniency would not only recognize these mitigating circumstances but also acknowledge the potential for rehabilitation and the support network Mr. Chen has in place, which can assist him in reintegrating into the community upon his release.

For all of these reasons, Mr. Chen respectfully requested that the Court consider these factors in determining a sentence that reflects both the seriousness of the offense and the unique circumstances of his life. A sentence that considers Mr. Chen's history, his character, and the positive contributions he has made to his community would be consistent with the principles of fairness and justice. Such a sentence would recognize that while Mr. Chen's actions were wrong, they were also influenced by complex factors that merit the Court's leniency.

> **B. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment. Need for the Sentence to Afford Adequate Deterrence and to Consider the Public's Need For Protection From Future Crimes.**

Providing just punishment is a core objective of sentencing, and in Mr. Chen's case, the sentence should reflect the need for proportionality. He has already faced significant consequences, including pretrial detention, reputational damage, and separation from his family. Just punishment, in this context, does not require a longer prison term than that which he has already served. A sentence without a further prison term would allow for acknowledgment of Mr. Chen's wrongdoing, while simultaneously recognizing the efforts Mr. Chen has made to take responsibility for his actions.

Deterrence is also a factor that must be addressed in sentencing. However, it is also important to note that Mr. Chen's personal circumstances—his age, health conditions, and the significant personal losses he has already endured—serve as strong deterrents against reoffending. Given these circumstances, the likelihood that Mr. Chen will engage in future criminal behavior is low.

Specific deterrence, as applied to Mr. Chen, can be achieved without imposing a longer incarceratory sentence. Mr. Chen is 72 years old and has significant health issues, including diabetes, hypertension and cognitive impairment, which have been exacerbated during his period of incarceration. A sentence that considers his age and health conditions

will still effectively deter Mr. Chen from future misconduct, especially given his genuine remorse and the support he has from his family, who will help ensure his successful reintegration into society. Mr. Chen has expressed a commitment to living a law-abiding life upon his release, and there is no indication that he poses an ongoing threat to the public.

Finally, there is little to suggest that Mr. Chen presents a danger to the community. His offense did not involve violence, and his history indicates that he is not prone to criminal behavior. Instead, he is an individual who made a serious mistake but has since taken steps to acknowledge his wrongdoing and make amends. The support network that Mr. Chen has in place—including his children, former spouses, and fiancée—will be instrumental in helping him reestablish himself in the community, minimizing any risk of recidivism. A sentence that allows for Mr. Chen's return to his family and community following his over year-long incarceration, would fulfill the objective of protecting the public while also recognizing his capacity for rehabilitation.

### C. Pertinent Policy Statement

In considering Mr. Chen's sentence, the Court must consider any pertinent policy statements issued by the United States Sentencing Commission. These policy statements provide guidance on applying the Sentencing Guidelines and are designed to promote consistency, fairness, and proportionality in sentencing decisions.

However, as established by *United States v. Booker*, the Guidelines are advisory, and while policy statements are relevant, they do not bind the Court. The Guidelines represent only one aspect of the sentencing analysis, and the Court must still consider the broader statutory goals outlined in 18 U.S.C. § 3553(a). The policy statements emphasize individualized assessment, taking into account both mitigating and aggravating factors. They provide general recommendations, but the Court retains the discretion to depart from these recommendations when justified by the specifics of a case.

In Mr. Chen's situation, policy statements addressing factors such as age, health, and lack of prior criminal history are particularly pertinent. Mr. Chen's age and his medical conditions weigh in favor of a more lenient sentence. The Sentencing Commission's guidelines acknowledge that physical condition may be a relevant consideration for departing from the typical sentencing range, particularly when imprisonment would impose an undue hardship or present unique challenges for an older defendant.

Moreover, Mr. Chen's lack of a criminal record and his demonstrated remorse further support a downward departure from the guideline range, consistent with the Sentencing Commission's recognition of mitigating factors. The policy statements emphasize the importance of ensuring that sentences are sufficient but not greater than necessary to fulfill the purposes of sentencing, reinforcing the idea that leniency may be appropriate in Mr. Chen's case to achieve a just outcome.

Ultimately, while the Sentencing Guidelines and their accompanying policy statements provide valuable guidance, the Court must exercise its discretion to craft a sentence that considers Mr. Chen's unique circumstances, aligns with the objectives of justice, and avoids undue harshness**.**

### D. Need to Avoid Unwarranted Sentence Disparities

The Court must also consider the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. This principle aims to ensure fairness and consistency in the criminal justice system, promoting public confidence that similarly situated individuals receive comparable treatment.

In Mr. Chen's case, his sentence must be consistent with those imposed on other defendants convicted of similar offenses, particularly in cases involving first-time offenders, mitigating circumstances, and non-violent conduct. Mr. Chen's lack of a prior criminal record, his age, his demonstrated remorse, and his unique personal history distinguish him from other defendants who may present a greater risk to the public or whose conduct may have been more egregious.

The advisory Sentencing Guidelines provide a useful starting point for assessing proportionality, but they are not mandatory, and the Court retains discretion to impose a sentence that aligns with Mr. Chen's individual circumstances. Courts have previously exercised leniency in cases involving elderly defendants or defendants whose involvement in an offense was significantly influenced by external pressures rather than deliberate and self-serving conduct.

Given Mr. Chen's age, health concerns, and the unique context of his offense, a sentence that incorporates alternatives to prolonged incarceration would be consistent with sentences imposed on similarly situated individuals. Such an approach would uphold the principle of avoiding unwarranted disparities, ensuring that Mr. Chen is treated equitably while also taking into account the mitigating factors that are present in his case.

By tailoring the sentence to Mr. Chen's specific situation, the Court can ensure that the punishment is fair and proportionate compared to other defendants, while also fulfilling the objectives of deterrence, rehabilitation, and justice.

### E. Need to Provide Restitution to Any Victims

The Court is also required to consider the need to provide restitution to any victims of the offense, as outlined in 18 U.S.C. § 3553(a). Restitution serves to compensate victims for any losses they suffered as a result of the defendant's conduct, helping to restore them as much as possible to the position they were in prior to the offense.

In Mr. Chen's case, there are no identifiable victims who suffered direct financial loss or harm as a result of his conduct. The offense, while serious, did not involve financial fraud, theft, or physical harm where restitution would typically be appropriate.

Therefore, there are no direct victims eligible for restitution under the circumstances of this case.

Given the absence of direct victims in this matter, the primary focus of Mr. Chen's sentencing should be on accountability, deterrence, and rehabilitation, rather than on restitution. The Court may consider imposing conditions that allow Mr. Chen to contribute positively to the community, thus indirectly addressing the broader harm caused by his offense.

### III. CONCLUSION

Wherefore, Mr. Chen, requests that this Honorable Court take into consideration the factors discussed above and impose a sentence of time served for Mr. Chen.

/s/Julie Rendelman
Julie Rendelman
Attorney for JOHN CHEN
Law Offices of Julie Rendelman, LLC
521 5th Avenue, Suite #1701
New York, New York 10175
212-951-1232

10/29/24

Case 7:23-cr-00286-NSR    Document 49    Filed 10/29/24    Page 12 of 13

.